2013 UT App 95

# THE UTAH COURT OF APPEALS

IN THE MATTER OF THE ESTATE OF
JUANITA MARIE VALCARCE.

JOHN VALCARCE,

*Petitioner and Appellee,*

*v.*

PAUL VALCARCE,

*Respondent and Appellant.*

Opinion
No. 20110863-CA
Filed April 18, 2013

First District, Brigham City Department
The Honorable Ben H. Hadfield
No. 103100018

Paul Valcarce, Appellant Pro Se
Jack H. Molgard, Attorney for Appellee

JUDGE CAROLYN B. MCHUGH authored this Opinion, in which
JUDGES J. FREDERIC VOROS JR. and STEPHEN L. ROTH concurred.

McHUGH, Judge:

¶1      Paul Valcarce appeals from the trial court's order probating the estate of his sister, Juanita Marie Valcarce; from the denial of his motion to alter or amend judgment; and from the denial of his motion for a new trial. We affirm.

BACKGROUND[1]

¶2    Juanita Valcarce (Decedent) died on March 8, 2010, survived by her siblings Paul Valcarce (Appellant), John Valcarce (Appellee), Edward E. Valcarce (Edward), and Ann Merrill.[2] After Decedent's death, Appellee and Edward filed a motion to Admit and Probate the Last Will and Testament of the Decedent (Motion to Probate 1991 Will). In the Motion to Probate 1991 Will, Appellee alleged that Decedent had executed a will sometime in 1991 (the 1991 Will), that the original of it had been lost, and that despite reasonable diligence, he was unaware of any instrument revoking the 1991 Will. Appellee requested that Decedent's estate be administered according to the lost 1991 Will, rather than through intestacy. Appellant contested the validity of the 1991 Will and argued that it should not be admitted to probate.

¶3    The factual issues were tried on May 18 and 27, 2011. Although Appellant was present at trial only on May 27, 2011, he was represented by counsel throughout the proceedings. Likewise, while Merrill was not present at trial on either date, she was represented by the same counsel as Appellant throughout the trial court proceedings.

¶4    During trial, Appellee called attorney Jeff Thorne, who testified that sometime in 1991 he had prepared the 1991 Will for Decedent. Thorne believed that the 1991 Will was properly

---

1. "On appeal from a bench trial, we view the evidence in a light most favorable to the trial court's findings, and recite the facts accordingly." *Pasker, Gould, Ames & Weaver, Inc. v. Morse*, 887 P.2d 872, 873 n.1 (Utah Ct. App. 1994).

2. Ann Merrill is not a party to this appeal. Although Appellant purports to represent her interests, he is not an attorney admitted to practice before the Utah courts and he filed his own appeal without the assistance of counsel. Therefore, Appellant cannot represent Merrill in these proceedings. *See Lundahl v. Quinn*, 2003 UT 11, ¶ 7, 67 P.3d 1000 (discussing pro se litigant's inability to "represent the legal interests of other persons").

executed, that the original of it was delivered to the Decedent, and that, consistent with his firm's practice, he retained only an unsigned copy of the 1991 Will in addition to the notes he made during his meeting with Decedent. Although Thorne did not have a specific recollection of Decedent executing the 1991 Will, he explained that it was his firm's practice for secretaries to act as witnesses and for the attorney to act as a notary in executing a will. Thorne believed the original 1991 Will was properly executed by the Decedent, witnessed by two firm employees, and notarized by him because, if it had not been, the original would have been kept with the copy in the firm's files. Thorne also testified that his firm was paid for drafting Decedent's 1991 Will, which further indicated that the original had been signed and executed. The unsigned, undated, and unwitnessed copy of the 1991 Will was received as an exhibit at trial, without objection. The terms of the 1991 Will, as reflected in the copy, indicate that Decedent left her entire estate to Appellee and another sibling, Arland Valcarce, who predeceased Decedent.

¶5    Edward also testified at trial, indicating that he found a one-page will (the One-Page Will) at Decedent's house a few days after her death. He could not recall what color the One-Page Will was, whether it was typewritten or handwritten, single or double spaced, or notarized. Although Edward did remember that the One-Page Will was signed by Decedent and two witnesses, he testified that he did not read the names of the witnesses and, therefore, could not identify them. He did not establish the date of the One-Page Will or indicate whether it included a date. Edward testified that he gave the One-Page Will to the Appellant, who told Edward during a subsequent telephone conversation that he was considering destroying it.[3] Neither the One-Page Will nor a copy of it were produced at trial.

---

3. Appellant did not testify at trial and therefore did not dispute Edward's allegation that he had threatened to destroy the One-Page Will.

¶6      Edward also testified regarding an affidavit, admitted as an exhibit at trial, that he filed with the trial court in support of the Motion to Probate 1991 Will. Consistent with his affidavit, Edward indicated that during a visit to the Decedent in her home six months before her death, she showed him an executed will that was dated sometime in the early 1990s and appointed Appellee as a personal representative of her estate. Edward stated that he read and discussed the contents of that will with Decedent and that they were the same as the terms in the copy of the 1991 Will located in Thorne's office. Edward also explained that the One-Page Will he found after Decedent's death was not the same will that Decedent had shown to him six months earlier but that it contained essentially the same terms regarding distribution of her estate.

¶7      The trial court issued its memorandum decision on June 7, 2011, finding that "[Decedent] executed the [1991 Will] received as Exhibit #1 in 1991. Said [1991 Will] acknowledges her various siblings and directs that her entire estate be given to her brothers, Arland Valcarce and [Appellee]. Arland Valcarce predeceased [Decedent]." The trial court additionally found, "[Edward's] testimony was at times somewhat confusing yet seemed credible. His testimony amounts to a declaration against interest because he receives inheritance from the estate if there is no will, yet receives nothing if either of the wills of which he testified are recognized by the court." The trial court then applied those factual findings to the legal question of "whether either the 1991 [W]ill or the [One-Page Will] . . . govern distribution of [D]ecedent's estate, or whether the estate should be distributed pursuant to Utah's laws of intestacy." Ultimately, the court determined "that the 1991 [W]ill governs [D]ecedent's estate." Based on these findings and legal conclusions, the trial court issued its order on August 2, 2011.

¶8      Appellant and Merrill filed a motion for a new trial on August 3, 2011, alleging that Appellant was denied his constitutional rights of due process and confrontation because "[Appellant] was unable to hear what was said, what was asked, and any rulings made by the [c]ourt during the trial . . . because the

bailiffs made him turn the volume down on the hearing device, given [to] him by the clerks." On August 5, 2011, Appellant and Merrill also filed a motion to alter or amend judgment, claiming that the trial court "failed to consider . . . controlling case law when it entered its decision admitting the unsigned, undated, and unattested alleged copy of [Decedent's] will into probate."

¶9 The trial court denied both motions on August 30, 2011. It determined that Appellant had "waived any objection concerning his ability to fully participate in this trial by . . . wait[ing] approximately two months after the decision was rendered . . . before raising this issue." Alternatively, the trial court determined "that any such defect constitutes harmless error and is not inconsistent with substantial justice. [Appellant] was fully represented by counsel at trial. [Appellant's] counsel could fully hear the proceedings and was able to fully present [Appellant's] case and defense in this matter." Additionally, the court found, "[Appellant's] attorney made the tactical decision to allow his client not to testify. The [c]ourt will not now allow a second bite at the apple because [Appellant] and his attorney regret this decision." Subsequently, the trial court found "that any such 'irregularity in the proceedings' did not prevent [Appellant] from having a fair trial." Last, in rejecting the motion to alter or amend judgment, the trial court reaffirmed its decision, stating "that the evidence adduced at trial establishes by clear and convincing evidence that the [D]ecedent intended the 1991 Will to constitute her will regardless of any deficiencies in its execution."[4]

¶10 Appellant filed a timely notice of appeal. In his docketing statement, Appellant challenges for the first time the trial judge's impartiality. According to Appellant, he learned only after judgment that, when Thorne drafted the 1991 Will, Thorne and the trial judge were partners in the law firm of Mann, Hadfield &

---

4. We discuss later in this opinion our conclusion that the proper standard for proving execution is by a preponderance of the evidence. *See infra* ¶ 27.

Thorne. As a result, Appellant seeks reversal and a new trial on the ground that the trial judge should have recused himself.

ISSUES AND STANDARDS OF REVIEW

¶11　Appellant challenges the sufficiency of the evidence underlying the trial court's findings of fact, and the trial court's legal conclusions based on those facts. "[W]e review a trial court's factual findings under a clearly erroneous standard and the legal sufficiency of those findings, as well as the legal conclusions based on those findings, under a correction-of-error standard." *Kimball v. Kimball*, 2009 UT App 233, ¶ 15, 217 P.3d 733.

¶12　Appellant also argues that the trial court abused its discretion when it denied his motions under rule 59 to alter or amend judgment and for a new trial. *See* Utah R. Civ. P. 59 (providing grounds to alter or amend a judgment and for new trial). "Generally, we afford trial judges wide latitude in granting or denying rule 59 motions. . . . Consequently, we generally disturb a trial court's grant or denial of a rule 59 motion only if it constitutes an abuse of discretion." *Sanpete Am., LLC v. Willardsen*, 2011 UT 48, ¶ 28, 269 P.3d 118. "An abuse of discretion may be demonstrated by showing that the district court relied on 'an erroneous conclusion of law' or that there was 'no evidentiary basis for the trial court's ruling.'" *Kilpatrick v. Bullough Abatement, Inc.*, 2008 UT 82, ¶ 23, 199 P.3d 957 (quoting *Morton v. Continental Baking Co.*, 938 P.2d 271, 274 (Utah 1997)).

¶13　Last, Appellant argues that the trial judge should have recused himself due to his membership in the law firm that drafted the 1991 Will during the same time that Thorne prepared it. *See* Utah R. Civ. P. 63(b)(1) (stating that a disqualification motion shall be filed "not later than [twenty] days after . . . the date on which the moving party learns or with the exercise of reasonable diligence should have learned of the grounds upon which the motion is based"); *see also id.* R. 59(a) (providing grounds for a new trial).

ANALYSIS

I. The Evidence of Proper Execution Was Consistent with
Statutory Requirements

¶14     Appellant first argues that the trial court failed to follow
controlling law because it ruled that the 1991 Will had been
properly executed despite Appellee's failure to offer the testimony
of at least one of the witnesses to the 1991 Will. Formal testacy
proceedings are governed by the Utah Uniform Probate Code
(UUPC). *See* Utah Code Ann. §§ 75-3-401 to -414 (Michie 1993).[5]
Appellee's Motion to Probate 1991 Will asserts that the original of
that document cannot be found and thus falls within the provisions
governing probate when "the original will is neither in the
possession of the court nor accompanies the petition" and is "lost,
destroyed, or otherwise unavailable." *See id.* § 75-3-402(2).
Appellee, as proponent of the 1991 Will, has the "burden of
establishing prima facie proof of due execution in all cases . . . ." *See
id.* § 75-3-407(1).

¶15     The proof necessary to establish due execution is discussed
in section 75-3-406, which provides,

> (1) If evidence concerning execution of an attested
> will which is not self-proved is necessary in
> contested cases, the testimony of at least one of the
> attesting witnesses, if within the state, competent,
> and able to testify, is required. Due execution of an
> attested or unattested will may be proved by other
> evidence.
>
> (2) If the will is self-proved, compliance with
> signature requirements for execution is conclusively
> presumed and other requirements of execution are

---

5. Because the portions of the Utah Code relevant to our decision
are unchanged, we cite to the current version of the code for the
convenience of the reader.

> presumed subject to rebuttal without the testimony of any witness upon filing the will and the acknowledgment and affidavits annexed or attached thereto . . . .

*Id*. § 75-3-406.

¶16     Here, Appellee argues that the 1991 Will "was self-proved in compliance with Utah Code [section] 75-2-504 allowing the [1991 Will] to be admitted to probate without the testimony of any subscribing witness." *See generally id*. § 75-2-504 (LexisNexis Supp. 2012) ("A will may be simultaneously executed, attested, and made self-proved, by acknowledgment thereof by the testator and affidavits of the witnesses, each made before an officer authorized to administer oaths under the laws of the state in which execution occurs, whether or not that officer is also a witness to the will, and evidenced by the officer's certificate, under official seal . . . ."). Although Appellant does not challenge the inclusion of a self-proving affidavit in the body of the 1991 Will, he claims that the submission of an unsigned copy of that affidavit cannot satisfy section 75-3-406(2).[6] Therefore, he contends that the trial court erred by not requiring the testimony of at least one attesting witness.[7] We

---

6. The Georgia Supreme Court seems to have adopted a contrary position. *See Westmoreland v. Tallent*, 549 S.E.2d 113, 114–16 (Ga. 2001) (holding that where only an unsigned copy of a will in an attorney's possession could be found, the lost will could be validated by uncontroverted testimony from the notary public who notarized the decedent's signature on a self-proving affidavit, without complying with the statutory requirement that all subscribing witnesses testify if available).

7. Appellant also contends that the trial court improperly ignored our decision in *In re Estate of Erickson*, 766 P.2d 1085 (Utah Ct. App. 1988), *aff'd*, 806 P.2d 1186 (Utah 1991), when it determined that the 1991 Will was properly executed. However, *In re Estate of Erickson* addresses the statutory requirements for execution of a valid

(continued...)

need not determine if the 1991 Will was self-proved, however, because we conclude that Thorne's testimony regarding its execution fulfills the requirement of section 75-3-406(1) that "at least one of the attesting witnesses" testify concerning execution.[8] *See id*. § 75-3-406(1) (Michie 1993).

¶17    The UUPC does not specifically define who may serve as an "attesting witness" for purposes of section 75-3-406(1). Nor does it employ the same term, "attesting witness," when describing the formalities of a will. *See id.* § 75-2-502 (LexisNexis Supp. 2012). Instead, the UUPC broadly provides that "[a]n individual generally competent to be a witness may act as a witness to a will," *see id.* § 75-2-505, and further requires that a will be signed "by at least two individuals, each of whom signed within a reasonable time after he witnessed either the signing of the will . . . or the testator's acknowledgment of that signature or acknowledgment of the will," *see id.* § 75-2-502(1). Additionally, in laying out the requirements for

---

7. (...continued)
holographic will, not whether there is sufficient evidence that the decedent executed a written will that has been subsequently lost. *See id*. at 1086.

8. Because we conclude that Thorne could serve as an attesting witness, we need not consider the circumstances under which "[d]ue execution of an attested or unattested will may be proved by other evidence." *See* Utah Code Ann. § 75-3-406(1) (Michie 1993); *see generally Wheat v. Wheat*, 244 A.2d 359, 363 (Conn. 1968) ("[P]roof of any . . . element of due execution, may come from sources other than the attesting witnesses."); *Spangler v. Bell*, 60 N.E.2d 864, 867 (Ill. 1945) ("[T]he law does not . . . leave a will or codicil entirely dependent upon the testimony of the subscribing witnesses. . . . The fact to be established is the proper execution of the will. If that is proved, it is sufficient, no matter from what source the evidence may come." (citations omitted)); 95 C.J.S. *Wills* § 671 (2011) ("The due execution of a will may be sufficiently established by circumstantial evidence or the testimony of witnesses other than the attesting witnesses.").

creating a self-proved will, the UUPC indicates that an "officer authorized to administer oaths under the laws of the state in which execution occurs," such as a notary, may perform a notarial act "whether or not that officer is also a witness to the will . . . ." *See id.* § 75-2-504(1); *see also id.* § 46-1-7 (LexisNexis 2010) ("A notary may not perform a notarial act if the notary . . . is a signer of the document that is to be notarized *except in case of a self-proved will as provided in Section 75-2-504.*" (emphases added)). Thus, there is nothing in the plain language of the UUPC that prohibits Thorne from serving as an attesting witness for purposes of proving execution under section 75-3-406(1).

¶18   Utah case law has not addressed whether "attesting witness" refers only to the individuals who serve as official witnesses to the execution of a will or whether it encompasses any individuals who could personally attest to the execution of the will, including the notary who was present during its execution. *Cf. Cazares v. Cosby*, 2003 UT 3, ¶¶ 17, 20, 65 P.3d 1184 (standing for the analogous proposition that "when a notary acknowledges the execution of a deed, having personally witnessed that execution, the notary qualifies as a subscribing witness within the meaning of section 57-2-10" which requires that, if available, a subscribing witness testify to prove execution of a deed). "Because Utah case law is not fully developed on this issue, we look to the case law from other jurisdictions for guidance." *State v. Montiel*, 2005 UT 48, ¶ 15, 122 P.3d 571 (citation and internal quotation marks omitted).

¶19   Numerous jurisdictions have held that a notary who signs a will in his or her capacity as a notary may be considered a valid, attesting witness to the will, regardless of whether he intended to sign only as a notary. *See, e.g., Smith v. Neikirk*, 548 S.W.2d 156, 158 (Ky. Ct. App. 1977) ("Testimony presented by [the notary] indicates that she witnessed the testator sign the will, then signed the will as a notary, and returned the will to him. The entire transaction indicates that [the notary] was there to witness the will and to further sign in an official capacity. The fact that she signed as a notary is merely surplusage."); *In re Estate of Martinez*, 664 P.2d 1007, 1012–13 (N.M. Ct. App. 1983) (holding that the notary was a

valid, attesting witness where the notary observed the testator sign the will, the notary signed the will by notarizing the testator's signature, and the notary was identified in the will as a notary); *In re Estate of Zelikovitz*, 923 P.2d 740, 744 (Wyo. 1996) ("There is no provision in the Wyoming statutes, nor any ruling in our cases, that would inhibit the notary public from serving as a witness, even if she intended to and did sign the document as a notary public.").

¶20 Other jurisdictions have held that a notary may serve as an "attesting witness" to prove execution "where such person could have served as a witness, under the circumstances, had he signed in that capacity." *See Simpson v. Williamson*, 611 So. 2d 544, 546 (Fla. Dist. Ct. App. 1992) (citing Annotation, *Wills: Character as Witness of One Who Signed Will For Another Purpose*, 8 A.L.R. 1075 (1920)). In *In re Estate of Alfaro*, 703 N.E.2d 620 (Ill. App. Ct. 1998), the court held that "a notary's signature may be deemed the signature of an attesting witness so long as all of the legal requirements of a valid attestation were nonetheless complied with when the notary affixed his signature." *Id.* at 627. The court explained,

> [T]he question to be determined is whether the notary was attesting merely to the genuineness of a signature or signatures and was therefore acting only in the capacity of a notary or whether the notary was attesting to all of the acts required by the statute that comprise the proper execution of the will and he was therefore acting as an attesting witness.

*Id*. The Illinois court concluded that only in the latter situation can a notary serve as a valid, attesting witness. *Id*.

¶21 Likewise, other courts have determined that a notary may qualify as an attesting witness if he or she otherwise fulfills the requirements of an attesting witness. For example, in *In re Estate of Black*, 102 P.3d 796 (Wash. 2004), the court explained, "[A] notary's signature met the legal requirements of attestation where the notary interacted with the testator and could judge his competency, the notary declared the testator signed the will in her presence, the

testator requested she sign the will, and she was qualified to be a witness." *Id.* at 804; *see also In re Estate of Gerhardt*, 763 A.2d 1289, 1291, 1293 (N.J. Super. Ct. Ch. Div. 2000) (holding that when a notary acts "*strictly* in his capacity as a notary public purporting to take an oath, [and] his signing is not effective as an attesting witness," the notary becomes an attesting witness by ensuring that the testator voluntarily and willingly executed the will, was over eighteen years of age, of sound mind, and not acting under any constraint or undue influence); *In re Estate of Teal*, 135 S.W.3d 87, 91–92 (Tex. App. 2002) (holding that a notary who did not intend to sign a will as a subscribing witness nonetheless served as a credible, attesting witness when she asked the testator about his will, confirmed that he was familiar with the will's contents and dispositions, and confirmed that he signed it of his own free will).

¶22    Moreover, these courts have held that where a notary qualifies as an "attesting witness," his testimony may be sufficient to establish due execution of a contested will. *See In re Estate of Teal*, 135 S.W.3d at 90, 92 (holding that because a notary qualified as an attesting witness, the notary's "testimony was sufficient to prove the will" and fulfill Texas's statutory requirement that one attesting witness must testify when a will is not self-proved); *see also In re Estate of Kero*, 591 So. 2d 675, 676–77 (Fla. Dist. Ct. App. 1992) (per curiam) (holding that the testimony of the only surviving attesting witness, the attorney who drafted the will, was sufficient to establish that an unsigned copy of a will was identical to the original executed by the decedent for purposes of proving the content of a lost original will for probate); *In re Estate of Mecello*, 633 N.W.2d 892, 899–900 (Neb. 2001) (holding that the testimony of an attesting witness—the attorney who prepared the will—established prima facie proof that the will was properly executed and fulfilled Nebraska's statutory requirement that "the testimony of at least one of the attesting witnesses, if within the state competent and able to testify, is required" (citation and internal quotation marks omitted)).[9]

---

9. While we do not address this issue, we note that some courts

(continued...)

¶23  We agree with the approach taken by other jurisdictions that a notary, who is otherwise competent to be a witness, can testify as an "attesting witness" to prove proper execution of a will when he or she was present during execution and had an opportunity to assess the competency of the testator. By signing an attestation clause, a witness does "nothing more than set forth in words things which the witnesses are supposed to observe anyway: that the testator is of sound mind and not acting under undue influence." *See In re Estate of Baxter*, 399 P.2d 442, 444 (Utah 1965) (holding that

---

9. (...continued)

have determined that the testimony of any individual who could personally attest to execution may be sufficient to admit a will to probate. *See, e.g., Thompson v. Hardy*, 43 S.W.3d 281, 286 (Ky. Ct. App. 2000) ("[P]ersons who were present during the executing of a will, but who did not serve as attesting witnesses, may offer sufficient evidence to establish due execution."); *White v. Brennan's Adm'r*, 212 S.W.2d 299, 300–01 (Ky. Ct. App. 1948) (holding that due execution was established by an attorney, who had retained a carbon copy of the testator's will which had been lost, where he testified that he prepared the will, that he was familiar with the requirements for a valid will, that he remembered the execution ceremony of the particular will in question, and that he had observed the signing of the will by the two witnesses, though he could not recall who those witnesses were); *In re Saxl's Estate*, 222 N.Y.S.2d 765, 766 (N.Y. Sur. Ct. 1961) (holding that, absent any contrary testimony, no reasonable doubt could exist as to the sufficiency of execution where the attorney, who was not a signatory witness to the will but who supervised its execution, testified to facts establishing its proper execution); *In re Estate of Wachsmann*, 563 N.E.2d 734, 737–38 (Ohio Ct. App. 1988) ("Appellant did not sign the will; hence, he was not a legal witness to it. . . . It is clear that appellant's testimony [that he was present at execution], standing alone, established a prima facie case for the will's admission to probate. Absent a showing that appellant was incompetent to testify, the court erred in refusing to probate the will since a prima facie case establishing the statutory requirements for making a will had been made.").

the witnesses' signatures located at the end of the attestation clause but not at the end of the will, were effective). Here, Thorne's trial testimony fulfills the same function. He testified that he met with Decedent and took notes regarding how she wished to distribute her estate, prepared the 1991 Will, and acted as the notary in certifying its execution by the testator and the witnesses. In doing so, Thorne became familiar with Decedent's intention and mental capacity when the 1991 Will was executed, and neither he nor Appellant called into question the soundness of Decedent's mind or suggested that she was unduly influenced. *See* Utah Code Ann. § 75-3-407(1) (Michie 1993) ("Contestants of a will have the burden of establishing lack of testamentary intent or capacity [or] undue influence . . . .").

¶24    By testifying, Thorne fulfilled the UUPC's mandate that "the testimony of at least one of the attesting witnesses, if within the state, competent, and able to testify, is required" in contested cases of formal testacy proceedings.[10] *See id*. § 75-3-406(1). Therefore, we reject Appellant's argument that the trial court failed to comply with the statutory requirements of section 75-3-406(1).

 II. The Trial Court's Findings of Fact Are Not Clearly Erroneous

¶25    Next, Appellant claims that the evidence does not support the trial court's finding that the 1991 Will was properly executed. In particular, Appellant contends that because Thorne did not have a specific recollection of watching Decedent execute the 1991 Will, his testimony was insufficient to support a finding that it was executed. Before we undertake that analysis, we pause to consider the level of proof required on this point.

---

10. Although Thorne testified that the two witnesses to the 1991 Will were secretaries employed by his firm, neither were called at the trial as attesting witnesses and no evidence was presented as to whether either witness was no longer in the state, incompetent, or unable to testify.

¶26    Although the UUPC establishes that the "[p]roponent[] of a will [has] the burden of establishing prima facie proof of due execution," it does not specify what standard of proof is applicable. *See id*. § 75-3-407. Prior to adoption of the UUPC, however, Utah courts required a proponent to prove that the will was properly executed by a preponderance of the evidence. *See In re Dong Ling Hing's Estate*, 2 P.2d 902, 904 (Utah 1931) ("The burden of proof was on the proponent of the will to establish by preponderance of the evidence both the lawful execution by the testator, and attestation thereof by the witnesses."). While the Utah appellate courts have not had occasion to address that issue since the adoption of the UUPC, the intent of the Utah Legislature in adopting the act was to "simplify and clarify the law concerning the affairs of decedents . . . ." *See* Utah Code Ann. § 75-1-102(2)(a); *see also In re Estate of Erickson*, 766 P.2d 1085, 1086 (Utah Ct. App. 1988) (stating that the Utah Legislature intended the provisions of the UUPC "to validate a will whenever possible"), *aff'd*, 806 P.2d 1186 (Utah 1991). Furthermore, the UUPC states, "Unless displaced by the particular provisions of this code, the principles of law and equity supplement its provisions." *See* Utah Code Ann. § 75-1-103 (Michie 1993).

¶27    For example, the UUPC expressly provides that the proponent of a will must establish by clear and convincing evidence that a document or writing, which fails to comply with the requirements that a will be in writing, signed by the testator, and signed by two attesting witnesses, was intended by the decedent to constitute his or her will. *See id.* § 75-2-503(1) (LexisNexis Supp. 2012). In contrast, no standard of proof is indicated for proving execution of a will. *See id.* § 75-3-406(1) (Michie 1993). Thus, we conclude that where the Utah Legislature intended to deviate from the standard of proof that existed before the adoption of the UUPC, it did so expressly. With respect to execution of an attested will that is not self-proved, the Utah Legislature did not displace the preponderance standard existing under pre-UUPC decisions. Accordingly, Appellee had the burden of proving that "the greater weight of the evidence" supported a finding that the 1991 Will had been properly executed. *See Handy*

*v. United States Bank, Nat'l Ass'n*, 2008 UT App 9, ¶ 25, 177 P.3d 80 (citation and internal quotation marks omitted). We now consider whether the trial court clearly erred in finding execution of the 1991 Will under that less onerous standard.

¶28 Appellant alleges that the evidence presented at trial is insufficient to support the trial court's finding that "[Decedent] executed the [1991] Will received as Exhibit #1." Specifically, Appellant argues that the unsigned, undated, and unwitnessed copy of the 1991 Will does not "indicat[e] any date [Decedent] allegedly ever signed the [1991 Will,] . . . the names of any witnesses who allegedly attested to the validity of [Decedent's] signature on the original [1991 Will,] or . . . the identity of the notary who allegedly notarized the original [1991 Will]." He further claims that "[t]here is simply no evidence indicating that the alleged original [1991 Will] was ever signed, notarized or witnessed, other than Mr. Thorne's belief, speculation, and conclusion" to the contrary.

¶29 However, Thorne provided detailed testimony about his normal practices with respect to the preparation and retention of wills prepared for firm clients during the relevant time period. Based on those practices, he indicated that he had prepared the 1991 Will for Decedent and acted as the notary to its execution. He also testified that, based on the normal practices of his firm, he believed the 1991 Will had been properly executed and witnessed. In particular, he indicated that the 1991 Will was "in writing," "signed by the testator," and "signed by at least two individuals, each of whom signed within a reasonable time after he witnessed either the signing of the will as described in Subsection (1)(b) or the testator's acknowledgment of that signature or acknowledgment of the will." *See* Utah Code Ann. § 75-2-502(1) (LexisNexis Supp. 2012); *see also id.* § 75-2-506 ("A written will is valid if executed in compliance with Section 75-2-502 . . . ."). Although Appellant contends that Thorne's lack of a specific memory of Decedent signing the 1991 Will is fatal to its probate, Utah decisions have long relied on testimony about usual practices as evidence of what was done in a particular instance. *See, e.g., In re Estate of Wheadon*,

579 P.2d 930, 931 (Utah 1978) (relying on usual practices of an attorney's law firm as evidence that the decedent was given the original copy of a will); *cf. Wells Fargo Bank Nevada, NA v. Toronto*, 2008 UT App 269U, para. 4 (mem.) (holding that the trial court properly relied on the bank's evidence of its normal business practice in finding that the cardholder's credit card came with written terms and conditions).

¶30    The testimony provided by Thorne was also corroborated by Edward.[11] He testified by affidavit and at trial that he visited Decedent six months prior to her death and that she showed him an executed will dated in the early 1990s. According to Edward, he read and discussed the contents of that will with the Decedent and the terms were the same as those in the copy of the 1991 Will introduced at trial. Thus, a reasonable inference from Edward's testimony is that he saw the executed copy of the 1991 Will approximately six months before Decedent's death.

¶31    Although Appellant concedes that Edward's affidavit supports the trial court's determination that the 1991 Will was properly executed, he claims that Edward "never testified about seeing [the 1991 Will] at trial." Review of the trial transcript belies that claim. While Edward did not offer the information during his direct examination, Appellant's cross-examination of Edward included a nearly verbatim reading of the affidavit into the record. And the trial court admitted the affidavit as a trial exhibit upon Appellant's motion. Contrary to Appellant's argument that the trial court "had to make [its] decision on the unsigned, undated, unwitnessed supposed copy of [Decedent's] will from the

---

11. In addition to the testimony of an attesting witness, or instead of such evidence when an attesting witness is not "within the state, competent, and able to testify," the "[d]ue execution of an attested or unattested will may be proved by other evidence." *See* Utah Code Ann. § 75-3-406(1) (Michie 1993). Although there was no evidence presented that the witnesses to the 1991 Will were unavailable, Edward's testimony is relevant to corroborate that provided by Thorne.

testimony at trial [and] not other things," the trial court could rely on the contents of the affidavit in making its factual findings. *See* Utah R. Civ. P. 43(a) ("All evidence shall be admitted which is admissible under the Utah Rules of Evidence or other rules adopted by the Supreme Court."); *id*. R. 52(a) ("Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous.").[12]

¶32  Appellant also challenges the trial court's finding that "[Edward's] testimony was at times somewhat confusing yet seemed credible. His testimony amounts to a declaration against interest because he receives inheritance from the estate if there is no will, yet receives nothing if either of the wills of which he testified are recognized by the court." Appellant contends, "[Edward's] testimony was so crazy you can't believe anything he said," and specifically argues that Edward's inability to recall particularities about the One-Page Will—testimony unrelated to the 1991 Will—undermines the trial court's credibility determination. However, this court has consistently held that "[t]he trial court has an advantaged position in assessing the credibility of witnesses and we will not disturb its determination of that issue on appeal." *See Grgich v. Grgich*, 2011 UT App 214, ¶ 14, 262 P.3d 418; *see also Lefavi v. Bertoch*, 2000 UT App 5, ¶ 20, 994 P.2d 817 ("The trial court is in the best position to assess the credibility of witnesses and to derive a sense of the proceeding as a whole, something an appellate court cannot hope to garner from a cold record." (citation and internal quotation marks omitted)). Furthermore, the trial court is correct that the terms of both of the wills testified to by Edward left him

---

12. While Appellant acknowledges that the affidavit was admitted as an exhibit at trial, he argues that it was admitted only for impeachment purposes to show that the affidavit was inconsistent with Edward's trial testimony because it did not mention the One-Page Will. However, even if that were true, such evidence may be considered for substantive purposes. *See* Utah R. Evid. 801(d)(1) advisory committee's note (indicating that the Utah rule deviates from the federal rule in that it allows the use of prior inconsistent statements for substantive purposes in certain circumstances).

nothing and that he would inherit if Decedent died intestate. In response, Appellant offers mere speculation about a hypothetical side deal between Appellee and Edward.[13]

¶33    Appellant has not met his burden of establishing that the trial court's findings are clearly erroneous. Accordingly, we accept the trial court's factual findings based on the evidence at trial and affirm the trial court's determination that the 1991 Will was properly executed. Because Appellant has not otherwise challenged the trial court's determination that the 1991 Will should govern the distribution of Decedent's estate, we also affirm the trial court's order accepting it for probate.[14]

III. The Trial Court Did Not Abuse Its Discretion in Denying Appellant's Motion to Alter or Amend and Motion for New Trial

¶34    Appellant asserts that the trial court abused its discretion by denying his motion to alter or amend. Appellant's claim is based entirely on his challenges to the sufficiency of the evidence underlying the trial court's findings of fact and the trial court's

13. Appellant also challenges the sufficiency of the evidence by claiming that there was never any proof presented to the trial court that Decedent actually paid Thorne for creating the 1991 Will. However, the proof provided to the trial court was Thorne's testimony, which the trial court believed.

14. Specifically, Appellant has not challenged the trial court's determination that "the evidence presented at trial was sufficient to rebut the presumption that the lost 1991 [W]ill was intentionally revoked" and that "there is no indication that the 1991 [W]ill was revoked as required by the [UUPC]." *See* Utah Code Ann. § 75-2-507(3) (LexisNexis Supp. 2012) (establishing a presumption that a will can be revoked by execution of a subsequent will); *In re Frandsen's Will*, 167 P. 362, 363–64 (Utah 1917) (discussing the well-established presumption that when a properly executed will is not produced for probate, the decedent is presumed to have destroyed the will with the intent of revoking it).

legal conclusions based on those facts. Because we affirm the court's findings, and its legal conclusions based on those findings, we also conclude that the trial court acted within its discretion in denying Appellant's motion to alter or amend.

¶35    Appellant next contends that the trial court abused its discretion by denying his motion for a new trial. In support, Appellant claims that he was unable to hear the proceedings before the trial court because the courtroom bailiff told him he had to turn down the hearing device provided to him by the court clerks, as it was causing a buzzing noise in the court microphones. Subsequently, Appellant claims that he was denied his right to confront witnesses and his right of due process guaranteed to him under the Sixth and Fourteenth amendments to the United States Constitution. *See generally* U.S. Const. amend. VI, XIV.

¶36    Rule 59 of the Utah Rules of Civil Procedure provides that "a new trial may be granted to all or any of the parties and on all or part of the issues, for any . . . [i]rregularity in the proceedings of the court . . . by which either party was prevented from having a fair trial." *See* Utah R. Civ. P. 59(a)(1). When reviewing the trial court's "ultimate decision to grant or deny a new trial, we will reverse only if there is no reasonable basis for the decision." *Crookston v. Fire Ins. Exch.*, 817 P.2d 789, 805 (Utah 1991), *holding modified by Westgate Resorts, Ltd., v. Consumer Prot. Grp., LLC*, 2012 UT 55, 285 P.3d 1219; *see also Okelberry v. West Daniels Land Ass'n*, 2005 UT App 327, ¶ 20 n.14, 120 P.3d 34 (reviewing a rule 59 motion under the abuse of discretion standard). "Moreover, we have stated that absent a showing by the appellant that the trial outcome would have differed, every reasonable presumption as to the validity of the verdict below must be taken as true upon appeal." *Child v. Gonda*, 972 P.2d 425, 429 (Utah 1998).

¶37    Under the circumstances of this case, we cannot say that the trial court abused its discretion in denying Appellant's motion for a new trial. In its decision, the trial court provided three distinct reasons to support its decision. First, the trial court determined that Appellant's objection was untimely because "[Appellant] made the

decision to not raise this issue with his counsel or the [c]ourt before, during, and immediately after the hearing. [Appellant] waited approximately two months after the decision was rendered in this matter before raising this issue." Second, the trial court indicated that "[Appellant] was fully represented by counsel at trial" and "[Appellant's] counsel could fully hear the proceedings and was able to fully present [Appellant's] case and defense in this matter." Third, the trial court determined that "[Appellant's] attorney made the tactical decision to allow his client not to testify" and "[t]he [c]ourt will not now allow a second bite at the apple because [Appellant] and his attorney regret th[at] decision." Because the trial court's rationale for denying the motion for new trial reasonably supports its decision, *see Crookston*, 817 P.2d at 805, and because the Appellant has failed to show how his attorney's actions or the trial outcome would have been any different if he were able to hear the proceedings or if he chose to testify, *see Child*, 972 P.2d at 429, the trial court did not abuse its discretion in denying Appellant's motion for a new trial.

## IV. Unpreserved Claims

¶38 Appellant advances two additional claims on appeal, including that the trial court should not have considered Edward's testimony because he was not a competent witness and that the trial judge should have recused himself from the case because he had worked for the same firm where Thorne was a partner. "As a general rule, claims not raised before the trial court may not be raised on appeal." *State v. Holgate*, 2000 UT 74, ¶ 11, 10 P.3d 346. "In order to preserve an issue for appeal, it must be raised in a timely fashion, must be specifically raised such that the issue is sufficiently raised to a level of consciousness before the trial court, and must be supported by evidence or relevant legal authority." *State v. Richins*, 2004 UT App 36, ¶ 8, 86 P.3d 759 (citation and internal quotation marks omitted).

¶39 Although Appellant made no objection to Edward's testimony on grounds of incompetence, he contends that he preserved this claim because trial counsel made statements in

closing argument that Edward's testimony was potentially incomplete and inconsistent. However, the closing argument of counsel is not a proper objection calling to the trial court's attention a basis for excluding Edward's testimony. By the time of argument, the testimony had been admitted without objection. Therefore, Appellant has not properly preserved this issue for review on appeal. *See id.*

¶40     Appellant acknowledges that his disqualification claim is being raised for the first time on appeal, which typically would be fatal. *See State v. Tueller*, 2001 UT App 317, ¶ 8, 37 P.3d 1180 ("[Appellant] acknowledges that he raises the issue of recusal for the first time on appeal. Therefore, he has not properly preserved it for review."). Nevertheless, he argues that we should consider this issue because he was unaware of the trial judge's alleged employment at Thorne's law firm until after his appeal was filed.

¶41     Rule 63(b) of the Utah Rules of Civil Procedure governs the disqualification of a judge. *See generally* Utah R. Civ. P. 63(b). It provides that "[a] party to any action . . . may file a motion to disqualify a judge," and that the motion must be "accompanied by a certificate that the motion is filed in good faith and shall be supported by an affidavit stating facts sufficient to show bias . . . or conflict of interest." *Id.* R. 63(b)(1)(A). The rule further provides that the motion must be filed "after commencement of the action, but not later than [twenty] days after . . . the date on which the moving party learns or with the exercise of reasonable diligence should have learned of the grounds upon which the motion is based." *Id.* R. 63(b)(1)(B)(iii). Appellant has filed neither a motion nor an affidavit setting forth the basis for his belief that the trial judge was a member of the same law firm at the time Thorne prepared the 1991 Will. *See Campbell, Maack & Sessions v. Debry*, 2001 UT App 397, ¶ 27, 38 P.3d 984 (holding that the failure to file an affidavit was fatal to the party's disqualification claim).

¶42     Even if Appellant could be excused from those requirements due to the fact that the trial court had rendered its decision and this appeal was pending when he first discovered the facts alleged, the

matter cannot be raised for the first time on appeal. Although Utah appellate courts have had no occasion to expressly consider the issue, decisions from other jurisdictions indicate that when a party discovers facts supporting the disqualification of the trial judge after judgment is entered, the proper procedure is to file a motion for relief from judgment, similar to the relief available under Utah Rule of Civil Procedure 60(b). *See* Utah R. Civ. P. 60(b) (providing grounds for relief from judgment); *see also Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 847, 863–70 (1988) (discussing a party's motion under the federal version of rule 60(b) in response to information that the trial judge served on the board of trustees of a college with a financial interest in the litigation that the party first discovered ten months after judgment was entered); *Perry v. Schwarzenegger*, 790 F. Supp. 2d 1119, 1121–23 (N.D. Cal. 2011) (discussing a party's motion to vacate judgment holding that Proposition 8's definition of marriage under the California Constitution violates the United States Constitution upon learning, for the first time during appeal, that the trial judge was a homosexual and was in a same-sex relationship at the time he presided over the case), *aff'd*, *Perry v. Brown*, 671 F.3d 1052 (9th Cir. 2012), *cert. granted*, *Hollingsworth v. Perry*, 133 S. Ct. 786 (Dec. 7, 2012) (No. 12-144); *Petzold v. Kessler Homes, Inc.*, 303 S.W.3d 467, 469 (Ky. 2010) (discussing a party's motion under Kentucky's version of rule 60(b) motion brought when, during appeal, they discovered that the daughter of the opposing party was the trial judge's treasurer during the judge's election campaign). By pursuing relief from judgment in the trial court, factual issues raised by Appellant can be explored and resolved, including the basis of Appellant's allegations, the time when Appellant knew or should have known of the information, and the trial judge's involvement with Thorne's law firm. Based on that factual record, the trial court can then determine whether the participation of the trial judge warrants a new trial. Furthermore, the rule 60(b) hearing and decision will create a factual record for appellate review.

¶43  Unlike a trial court, we do not find facts, and our review is limited to the factual record developed in the trial court. *See In re United Effort Plan Trust*, 2012 UT 47, ¶ 6 n.4, 289 P.3d 408 ("[O]ur

review is 'limited to the evidence contained in the record on appeal.'" (quoting *State v. Pliego*, 1999 UT 8, ¶ 7, 974 P.2d 279)). Therefore, we decline to consider Appellant's claim that the trial judge should have recused himself from serving in this matter.

CONCLUSION

¶44　The trial court did not err in probating the estate of Decedent according to the terms of the 1991 Will. We affirm the trial court's factual determinations because Appellant has failed to demonstrate how the findings were clearly erroneous. Additionally, we conclude that the trial court acted within its discretion in denying Appellant's motion to alter or amend and his motion for a new trial. Last, we determine that Appellant's remaining claims were not preserved for appellate review.

¶45　Affirmed.

_____