2015 UT App 98

# THE UTAH COURT OF APPEALS

GARY STOKES AND PAULINE STOKES,
Plaintiffs and Appellees,

*v.*

TLCAS, LLC; GARY GEE; NANCY GEE;
AND AUTO-OWNERS INSURANCE COMPANY,
Defendants and *Appellants*.

AUTO-OWNERS INSURANCE COMPANY,
Third-party Plaintiff and Appellee,

*v.*

MARVA GEE,
Third-party Defendant and Appellant.

Memorandum Decision
No. 20130829-CA
Filed April 23, 2015

Third District Court, West Jordan Department
The Honorable Barry G. Lawrence
No. 070400758

Denver C. Snuffer Jr., Steven R. Paul, and
Daniel B. Garriott, Attorneys for Appellants
TLCAS, LLC; Gary Gee; Marva Gee; and Nancy Gee

Richard K. Glauser and Michael W. Wright,
Attorneys for Appellee Auto-Owners Insurance
Company

P. Bryan Fishburn, Attorney for Appellees
Gary Stokes and Pauline Stokes

JUDGE KATE A. TOOMEY authored this Memorandum Decision, in
which JUDGES J. FREDERIC VOROS JR. and MICHELE M.
CHRISTIANSEN concurred.

TOOMEY, Judge:

¶1 TLCAS, LLC, together with Gary Gee, Marva Gee, and Nancy Gee (collectively, TLCAS) appeals from the trial court's ruling that TLCAS engaged in deceptive and unconscionable practices under the Utah Consumer Sales Practices Act (the UCSPA) and is liable to Auto-Owners Insurance Company (Auto-Owners) for costs related to a dealer's bond and reasonable attorney fees under the terms of an indemnification agreement. Specifically, it contends the court erred by (1) relying on the lay opinions of Gary and Pauline Stokes to conclude that TLCAS had forged the Stokeses' signatures on a document; (2) finding TLCAS's sale of a truck with an odometer showing substantially different mileage from the actual mileage travelled was a deceptive practice; and (3) inappropriately considering hearsay evidence that the Stokeses paid for the truck. Finally, TLCAS argues Auto-Owners settled its claim with the Stokeses in bad faith and Auto-Owners' participation in the trial after the settlement was improper. We affirm.

¶2 TLCAS, LLC, a licensed used car dealership owned by Gary and Marva Gee, is bonded by Auto-Owners.[1] In May 2006, TLCAS bought a 1996 Dodge truck with certified mileage of 189,041. Sometime between May and August 2006, TLCAS replaced the truck's dashboard and instrument panel with one from another vehicle. The replacement odometer showed only 103,510 miles—at least 85,000 fewer miles than the truck had actually been driven.

---

1. "On appeal from a bench trial, we view the evidence in a light most favorable to the trial court's findings . . . ." *Alvey Dev. Corp. v. Mackelprang*, 2002 UT App 220, ¶ 2, 51 P.3d 45 (citation and internal quotation marks omitted).

¶3      In October 2006, Gary Stokes decided to purchase the truck—in part because of its relatively low mileage. Gary Stokes contacted an account manager at his bank for advice about whether he should pay for the truck by applying for a loan or with cash from the proceeds of a recent trailer sale. The account manager advised Gary Stokes to pay for the truck with cash.

¶4      On October 2, 2006, Gary Stokes drove to TLCAS where he negotiated the purchase of the truck. During negotiations, no one at TLCAS disclosed that the dashboard had been replaced or that the mileage on the odometer was inaccurate. After agreeing on a purchase price of $3,900, Gary Stokes informed Gary Gee that he would return with his wife later that day to purchase the truck.

¶5      That evening, the Stokeses met with Gary Gee to complete the purchase. With sales tax and fees, the purchase price totaled $4,548.74, but the Stokeses had only $4,500 in cash with them. Nevertheless, Gary Gee agreed to take this sum as payment in full. As part of the purchase, the Stokeses signed a number of documents, including a Motor Vehicle Contract of Sale, a Vehicle "As Is" Agreement, a customer-choice statement, and an "Odometer Disclosure Statement." On the "As Is" Agreement, below the seller and buyer information boxes, the word "exempt" was typed in the box for noting the odometer reading. Moreover, the Odometer Disclosure Statement contained the typed word "exempt" in the odometer reading box.

¶6      After signing the documents, Pauline Stokes asked Gary Gee to give her a receipt for the $4,500 purchase. He replied that the contract was her receipt. Pauline Stokes insisted, but Gary Gee offered several excuses for not providing it and told her "a receipt written by hand on a piece of paper would not be legal." Pauline Stokes then demanded the return of the $4,500 payment, before Gary Gee relented and "gave her a hand written receipt and included it with the copies of papers they had signed." After they received the receipt, the Stokeses' "attention was diverted

by another customer who was loudly airing a complaint." A few days later Pauline Stokes noticed the receipt was no longer in the pile of papers.

¶7    The Stokeses left the dealership without the truck, explaining that Gary Stokes would return to pick it up. The next day, just after he took possession of the truck, its "tail pipe and muffler broke loose and dropped to the street." While wiring the muffler and exhaust pipes in place to get home, Gary Stokes noticed they were heavily rusted and had holes in them.

¶8    After unsuccessfully trying to convince TLCAS to pay part of the cost of a new muffler and repairs, Gary Stokes contacted the Utah Highway Patrol. A patrolman investigated First Choice Emissions, Gary Gee's other business, to determine how the truck had passed the most recent safety and emissions inspection in its unsafe condition. The patrolman concluded that the truck's "prior safety and emission inspection . . . had been improperly conducted, and he gave a written warning to First [Choice] Emissions."

¶9    In November 2006, claiming the Stokeses had failed to pay for the truck, TLCAS submitted to the Division of Motor Vehicles (the DMV) an Application for Certificate of Title for the truck (Application for Title). The application listed TLCAS as a lienholder. Nancy Gee, Gary and Marva Gee's daughter, completed the Application for Title. This document was purportedly signed by the Stokeses on October 2, 2006, but in contrast to all other documents signed by them on that date, the signatures were clearly in someone else's handwriting. The trial court noted that while the Stokeses' handwritten signatures on all other documents were "remarkably consistent," the signatures on this application were "markedly different." Moreover, Gary Stokes's name was misspelled "Gay R. Stokes."

¶10    The DMV responded to TLCAS's Application for Title and notified it that the truck's title had already been issued to a

local credit union as the lienholder.[2] Because it could not obtain the title, TLCAS obtained a duplicate title showing itself as a lienholder with an application completed by Marva Gee. Marva Gee signed the document "Gary R. Stokes by TLCAS Marva Gee" without Gary Stokes's permission.

¶11    In January 2007, the Stokeses filed a complaint against TLCAS, LLC, Gary Gee, Nancy Gee, and Auto-Owners[3] alleging that they owned the truck free of any liens claimed by TLCAS. The Stokeses sought damages under various theories, including violations of the UCSPA for deceptive and unconscionable practices, breach of contract, and fraud. Moreover, the Stokeses sought payment from Auto-Owners under the dealer's bond.[4] On February 26, 2007, when it filed its answer to the Stokeses' complaint, Auto-Owners filed a cross-complaint against TLCAS seeking enforcement of the terms of an indemnity agreement.[5]

---

2. It is unclear why the credit union was listed as a lienholder, but it later released the lien on the truck and gave title to the Stokeses.

3. The Stokeses also named First Choice Emissions in the complaint, but those claims are not relevant to this appeal.

4. Before trial and after completing formal mediation, Auto-Owners and the Stokeses negotiated a settlement of $5,000 for the release of their claim. Auto-Owners' only remaining claim during trial was against TLCAS.

5. The trial court found, "As a condition for the issuance of the bond, [TLCAS] signed an application for bond which contained an indemnity agreement . . . promis[ing] to completely indemnify [Auto-Owners] against any liability, loss, cost, attorney's fees and expenses . . . which [Auto-Owners] shall at any time sustain as a surety."

Furthermore, on March 12, 2007, TLCAS filed a counterclaim against the Stokeses.[6]

¶12   A bench trial was held in May 2013, during which the Stokeses testified regarding their recollection of the events. They also testified that the signatures on the Application for Title were not theirs. Pauline Stokes testified about her dispute with Gary Gee over the receipt. The Stokeses called several witnesses, including their account manager, who described his discussion with Gary Stokes about using cash to make the purchase, and another witness, who testified that he purchased one of Gary Stokes's trailers for $8,500 cash on October 1, 2006. Likewise, Gary Gee, Marva Gee, and their children Nancy Gee and Dale Gee, testified regarding their recollections of the truck sale and subsequent events. Marva Gee testified that she signed Gary Stokes's name on the application for duplicate title without his permission.[7] Moreover, Gary Gee testified that the Stokeses did not pay for the truck but did sign the Application for Title.

¶13   The trial court ruled in favor of the Stokeses and Auto-Owners. It concluded that TLCAS's sale of the truck with "an odometer that displayed approxima[tely] 85,000 miles less than actual miles, without disclosing to [the Stokeses] the discrepancy

---

6. TLCAS's counterclaim alleged seven causes of action against the Stokeses, including fraud and conversion for not obtaining financing for the truck and taking the truck without paying for it. The trial court eventually dismissed with prejudice TLCAS's counterclaim for lack of merit. TLCAS does not challenge the dismissal.

7. Marva Gee acknowledged she did not contact Gary Stokes when she signed his name. When asked why she signed Gary Stokes's name without first contacting him, she claimed that an independent form processing service directed her to do so.

or its cause, is a deceptive act as well as an unconscionable practice." The court also found that submitting a forged document to the DMV and requesting a lien on the truck notwithstanding the Stokeses' payment was an unconscionable practice. Moreover, the court concluded that Auto-Owners acted in good faith in settling its claim with the Stokeses.

¶14 Because the Stokeses were unable to provide proof of a substantial reduction in the truck's value as a result of TLCAS's conduct and calculating the damages was therefore problematic, the court awarded only statutory damages of $2,000 and reasonable attorney fees. *See* Utah Code Ann. § 13-11-19(2), (5)(a) (LexisNexis 2013). The court also ordered TLCAS to release the lien recorded on the duplicate title and surrender it to the Stokeses. Finally, consistent with the findings, the court entered judgment in favor of Auto-Owners against TLCAS, Gary Gee, and Marva Gee, "each of whom is jointly and [severally] liable for the debt," including the $5,000 paid to the Stokeses and reasonable attorney fees, under the terms of the indemnity agreement. TLCAS appeals.

## I. The Application for Title

¶15 The court found that the Stokeses had not signed the Application for Title and "that someone with TLCAS forged the signatures of Gary Stokes and Pauline Stokes that appear on the Application for Title."[8] TLCAS does not explicitly challenge the finding that the signatures were forged; instead it contends "the court erred by relying exclusively on the testimony of the

---

8. Based on the record, we determine that the court did not conclude that TLCAS committed the crime of forgery. Rather it found that the Stokeses signatures were "forged" in the colloquial sense—the signatures were imitated on the application.

Stokes[es] to conclude the signature in question was a forgery." TLCAS also argues the court erred by relying on lay opinions to support its finding that the signatures on the Application for Title was forged. It argues "[a] forged signature generally falls outside the scope of lay opinion."

¶16 The Stokeses' testimony was used to determine facts in issue—whether they actually signed the document. The trial court has wide discretion in determining the admissibility of lay opinion testimony and we review such decisions under an abuse of discretion standard. *Cf. State v. Larsen*, 865 P.2d 1355, 1361 (Utah 1993).

¶17 Pursuant to rule 901 of the Utah Rules of Evidence, a non-expert's opinion may be used as evidence to authenticate or identify handwriting if the witness has "a familiarity with it that was not acquired for the current litigation." Utah R. Evid. 901(b)(2). A lay witness may offer opinion testimony if it is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or *to determining a fact in issue*; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." *Id.* R. 701 (emphasis added). Furthermore, "no expert testimony is required [i]f the matter at issue in the case . . . is within the knowledge of the average trier of fact." *State v. Payne*, 964 P.2d 327, 332 (Utah Ct. App. 1998) (alteration and omission in original) (citation and internal quotation marks omitted). Because the Stokeses' testimonies regarding the signatures on the Application for Title were based on their perception and familiarity with their own and each other's signatures, not a specialized knowledge of signatures, it was not improper for the court to use their testimonies as a basis for finding that the Stokeses did not sign the application. The trial court did not abuse its discretion in allowing the Stokeses to testify concerning their own and each other's signatures.

¶18 In finding that the signatures were forged, the trial judge compared the signatures on the Application for Title with the other documents purported to be signed by the Stokeses. The judge concluded, "Clearly, those were not their signatures and I believe that it doesn't take an expert to make a determination that those were so different so as not to be the Stokes[es'] signature[s] and the . . . testimony in that regard supports that." In a civil context, the court's finding that the signatures on the Application for Title were forged is a factual finding, not a legal determination. *Cf. Valcarce v. Valcarce (In re Estate of Valcarce)*, 2013 UT App 95, ¶ 11, 301 P.3d 1031 (applying the clearly erroneous standard in reviewing whether a will was properly executed). Accordingly, we review this decision for clear error. *See id.* ¶¶ 11, 27–33.

¶19 The signatures on the Application for Title differ markedly from those on the other documents signed by the Stokeses on October 2, 2006. Moreover, the Stokeses testified that they did not sign the Application for Title. This documentary evidence and lay testimony sufficiently supports the trial court's finding. Accordingly, we conclude that the judge's finding was "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702," *see* Utah R. Evid. 701, and consequently the matter was "within the knowledge of the average trier of fact," *see Payne*, 964 P.2d at 332 (citation and internal quotation marks omitted). In sum, the court did not abuse its discretion in allowing the Stokeses to testify regarding their signatures, and it was not a clear error to find without the help of an expert that the signatures were forged.

## II. The Utah Consumer Sales Practice Act

¶20 TLCAS contends the trial court erred when it found that TLCAS violated the UCSPA, because "the [Stokeses] have failed to establish that [TLCAS] knowingly or intentionally" misrepresented the mileage on the truck. TLCAS also argues the court erred because the "As Is" Agreement and similar waivers

prohibited the Stokeses from filing suit regarding any express or implied warranties about the truck.

¶21    We do not address the merits of these arguments. "This court will not reverse a ruling of the trial court that rests on independent alternative grounds where the appellant challenges only one of those grounds." *Salt Lake County v. Butler, Crockett & Walsh Dev. Corp.*, 2013 UT App 30, ¶ 28, 297 P.3d 38. That is the case here. Even if the court erred in finding that TLCAS had engaged in an unconscionable or deceptive practice by misrepresenting the truck's actual mileage, the trial court found that TLCAS violated the UCSPA on two alternative grounds that TLCAS has not shown to be erroneous. The court also found that TLCAS engaged in unconscionable practices by forging the Application for Title and then submitting the forged document to the DMV in order to procure a title showing itself as a lienholder. Moreover, the court found it unconscionable to claim a lien on the truck notwithstanding the Stokeses' payment, as discussed below. *See infra* ¶¶ 22–23. And as discussed above, TLCAS has not demonstrated error in the court's determination that the signatures on the Application for Title were forged. Therefore, the court did not err when it found TLCAS engaged in deceptive and unconscionable practices under the UCSPA.

### III. Other Issues

¶22    TLCAS also contends the trial court erred in finding that the Stokeses paid for the truck and in finding in favor of Auto-Owners, but TLCAS has failed to carry its burden on appeal. "[A] reviewing court is entitled to have the issues clearly defined with pertinent authority cited and is not simply a depository in which the appealing party may dump the burden of argument and research." *State v. Thomas*, 1999 UT 2, ¶ 11, 974 P.2d 269 (alteration in original) (citation and internal quotation marks omitted). Rule 24 of the Utah Rules of Appellate Procedure requires that the appellant's brief "'contain the contentions and reasons of the appellant with respect to the issues presented . . .

with citations to the authorities, statutes, and parts of the record relied on.'" *State v. Honie*, 2002 UT 4, ¶ 67, 57 P.3d 977 (quoting Utah R. App. P. 24(a)(9)). Moreover, the rule also requires a brief to be "concise, presented with accuracy, logically arranged with proper headings and free from burdensome, irrelevant, immaterial or scandalous matters." Utah R. App. P. 24(k).

¶23   First, TLCAS inadequately briefs the argument that the trial court erred in relying on the testimonies of Gary Stokes, the Stokeses' account manager, and another witness to determine the Stokeses paid for the truck. At trial, the account manager testified that he and Gary Stokes discussed whether Gary Stokes would use cash to purchase a new truck as opposed to obtaining a loan and another witness testified that he purchased one of Gary Stokes's trailers for $8,500 cash on October 1, 2006. TLCAS implicitly contends that the account manager's and the other witness's testimonies were offered to prove that the Stokeses paid for the truck, but it does not explicitly state this. Moreover, TLCAS fails to explain how the account manager's or the other witness's testimonies are irrelevant or hearsay. Instead, TLCAS merely offers conclusory statements supported by two citations to the trial transcript that could support a finding that the Stokeses did not pay for the truck. TLCAS offers no hearsay framework or authorities to analyze this argument and fails to cite relevant parts of the trial court's actual findings.

¶24   Second, TLCAS mistakenly argues that Auto-Owners had a duty to defend it under the bond contract and it asserts that Auto-Owners' settlement with the Stokeses was done in bad faith. TLCAS's argument erroneously relies on case law about a liability insurance company's duty to defend its insured. Auto-Owners does not insure TLCAS. Auto-Owners holds a surety bond for TLCAS and, in consideration for the bond, TLCAS agreed to indemnify it for any costs incurred relating to the bond. The indemnity agreement's language is undisputed and clear: "To completely INDEMNIFY [Auto-Owners] from and against any liability, loss, cost, attorney's fees and expenses

whatsoever which [Auto-Owners] shall at any time sustain as surety or by reason of having been surety on the bond."

¶25 Then, TLCAS provides two paragraphs of conclusory statements attempting to argue that Auto-Owners' settlement with the Stokeses was in bad faith and its attorney fees were unreasonably high because it should not have participated in trial and pre-trial activities. TLCAS overlooks the fact that Auto-Owners' cross claim against TLCAS for enforcement of the indemnity agreement remained at issue during trial. Moreover, TLCAS fails to offer any case law to support this proposition.

¶26 Finally, TLCAS's brief generally fails to meet several aspects of rule 24's requirement that it be "presented with accuracy" and "free from burdensome [or] irrelevant . . . matters." Utah R. App. P. 24(k). For example, TLCAS's articulation of the "Facts established in the District Court Record" differs significantly from the Findings of Fact made by the trial court. It often makes assertions contrary to the court's findings and portrays those assertions as if they reflected the court's findings by citing the trial transcript in support. For instance, TLCAS states, "[TLCAS] allowed [the Stokeses] to take the truck, believing [the Stokeses] would return promptly with payment. (TR. 239, ll. 9–16). This did not happen. (TR. 237–240)." The trial court, however, clearly found that "Mr. and Mrs. Stokes handed over to Gary Gee approximately $4,500 cash in payment of the Dodge truck."

¶27 Moreover, TLCAS fails to include the court's findings of fact and conclusions of law as an addendum to its brief. *See* Utah R. App. P. 24(a)(11)(C). Instead, TLCAS attached self-serving portions of the trial transcript, copies of the truck purchase documents, and a copy of the Application for Title. TLCAS often implicitly challenges the court's findings of fact, but it does not clearly identify the specific findings it seeks to have set aside, fails to support the argument with adequate case law, and fails to marshal the evidence that supports such findings. *See id*

R. 24(a)(9). This inadequate briefing "placed a tremendous burden of factual and legal research on [the court]." *See Ninow v. Lowe* (*In re Estate of Pahl*), 2007 UT App 389, ¶ 17, 174 P.3d 642 (internal quotation marks omitted). Accordingly, "[w]e decline to assume the role of advocate regarding these remaining contentions." *See State v. Honie*, 2002 UT 4, ¶ 68, 57 P.3d 977. Therefore, because of the inadequacies of its brief, TLCAS has failed to carry its burden of persuasion on appeal.

## IV. Conclusion

¶28    The trial court did not err in finding that the signatures on the Application for Title were forged or in concluding TLCAS violated the UCSPA. Furthermore, we are not persuaded that the court erred in finding that the Stokeses paid for the truck and concluding that TLCAS was liable to Auto-Owners under the indemnity agreement. The Stokeses and Auto-Owners have requested attorney fees and costs incurred on appeal. We award the Stokeses and Auto-Owners their costs pursuant to rule 34(a) of the Utah Rules of Appellate Procedure. But, as they have failed to "set forth the legal basis for such an award" in the argument, we decline to award attorney fees to the Stokeses and Auto-Owners. *See* Utah R. App. P. 24(a)(9).

¶29    We affirm the judgment of the trial court in all respects.

———————