**2025 UT App 134**

### THE UTAH COURT OF APPEALS

ESTHER REID AND MINA RICHINS,
Appellants,
*v.*
ALL SURFACE LC, BRAD WATSON, AND DAVID SMITH,
Appellees.

Opinion
No. 20230675-CA
Filed September 5, 2025

Fourth District Court, Provo Department
The Honorable Christine S. Johnson
No. 200400795

Sean Nobmann, Attorney for Appellants

S. Spencer Brown, Attorney for Appellees

JUDGE JOHN D. LUTHY authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and DAVID N.
MORTENSEN concurred.

LUTHY, Judge:

¶1 Esther Reid and her mother, Mina Richins, discovered a large puddle of water in the basement of Reid's home, where Richins also lived. Water had been seeping into a wall between a bathroom shower and the furnace room for some time, and mold had begun to grow in the wall. Reid contracted with All Surface LC to install a new shower and, she contends, to remediate the mold. All Surface installed a new shower but did not remediate the mold. Two years later, Reid discovered that the mold had not been remediated and that it was a likely cause of health problems that she and her family were experiencing. Reid and Richins sued All Surface and two of its employees, alleging breach of contract, breach of the covenant of good faith and fair dealing, fraud,

negligent misrepresentation, civil conspiracy, negligence, and breach of the implied warranty of habitability.

¶2　　All Surface and the other defendants moved for summary judgment on all of Reid and Richins's claims, arguing (among other things) that the claims were barred because All Surface's contract with Reid was integrated and released All Surface from liability for "any and all claims . . . resulting from mold." The district court granted the motion and entered judgment in favor of the defendants. Reid and Richins then filed a motion to alter the judgment under rule 59 of the Utah Rules of Civil Procedure, and the court denied that motion. Reid and Richins now appeal, asserting that the court erred in granting summary judgment and in denying their post-judgment motion. We affirm.

BACKGROUND[1]

*The Flood and Mold*

¶3　　A shower in the basement bathroom of Reid's home shares a wall with the home's furnace room. On the furnace room side, the wall was not finished—no drywall covered the studs. On the shower side, the studs were covered with "green board" drywall, which in turn was covered by plywood or other wood paneling, over which tile had been laid. At some point, a condensation drain line had been run from the furnace, through the wall, and into the shower, about "[s]ix inches or a foot" "above the floor of the shower stall." The drain line "went straight through the wall and ended." "It didn't have a downward angle to it or anything like

---

1. "In reviewing a district court's grant of summary judgment, we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party and recite the facts accordingly." *Ockey v. Club Jam*, 2014 UT App 126, ¶ 2 n.2, 328 P.3d 880 (cleaned up).

that," and the hole it came through "was not sealed." As a result, when the condensation from the furnace "sprayed out of [the drain line], some of that water [would go] into the wall." This eventually caused the furnace room and bathroom to "flood," creating "a pretty deep puddle of water." Because the "seepage into the wall had likely been going on for a while" before the rooms flooded, the wall was "soft and rotting," and "mold . . . [had] start[ed] to grow."

*Reid Obtains Bids for Remediation Work*

¶4　After discovering the puddle, Reid and Richins "sopped up all the water, vacuumed [the area] with a shop vacuum, [and] got fans in there." Reid then "had somebody come to test if the walls were dry" and to otherwise "look at stuff." That person told Reid she was "doing all the right things."

¶5　Reid knew she "needed to take care of the wood around the shower," so she called about ten different mold remediation companies to get bids for the needed work. One company (Remediation Company) explained to Reid that "when you're dealing with rotted wood and possible mold, . . . you need to set up a containment and have air scrubbers running with a negative air pressure so that . . . anything that's stirred up is not spread through the house." Remediation Company gave Reid a bid to tear out and remodel the whole bathroom and remediate the mold. However, because the shower was smaller than the size of standard shower inserts, Remediation Company suggested that it "do all the tear-out and mold remediation" but that Reid ask a different company—namely, All Surface—to install a new shower because All Surface "could do a custom shower" that would be "guaranteed to never leak."

¶6　Reid called All Surface, and on March 9, 2017, All Surface sent a sales associate, Brad Watson, to "inspect[] the downstairs bathroom." Reid showed Watson the mold on the wall. Watson

then gave Reid a presentation regarding All Surface's shower inserts. According to Reid, Watson also told her that, in addition to putting in a new shower, All Surface could "do full mold remediation, tear everything out, [and] reframe the shower." In reality, All Surface was not certified or licensed to remediate mold. Reid decided that, rather than have Remediation Company do the tear-out and mold remediation and All Surface do the new shower, she would have All Surface do all the work.

*Reid's Contract with All Surface*

¶7    Watson prepared a contract between Reid and All Surface (the Contract), and Reid signed the Contract on March 9, 2017.[2] The first page of the Contract assigns a job number to the agreement, outlines a contract price of $8,470, notes that it is for a "Fast bath 3-4 weeks," and contains Reid's signature with a date. Just above Reid's signature, the opening paragraphs of the Contract (the Opening Paragraphs) state as follows:

> It is important that the customer is confident everything that has been promised to them is listed in writing on this *Customer Agreement and the Job Specification Forms*.
>
> This means that all services, products, and accessories are listed in the Job Specification forms

---

2. During her deposition, Reid testified that Watson characterized the Contract as "just . . . the fine print stuff" and that she was not given sufficient time to read the Contract before signing it. However, she has not argued that the Contract should be voided because she was unable to read it. Additionally, she acknowledges that she received a copy of the signed Contract the day after she executed it, that the Contract included a clause giving Reid a limited right to cancel the Contract, and that she did not exercise that right.

attached are used as the guide to order all labor and products and to complete the Bathroom Remodel successfully. Please review and sign all Agreement and Job Specification Forms to insure understanding of the services that will be performed. The Customer understands that items not listed have not been charged for and any additional services or products added and approved by the customer will require a Change Order Request Form.

¶8      The second page of the Contract contains a number of general provisions, including the following "RELEASE" clause:

Customer agrees to indemnify, hold harmless, release, and forever discharge ("Release") All Surface . . . from and against any and all claims, demands, suits, judgments, and costs incurred by reason of or resulting from mold or mildew found or not found, seen or unseen, discovered at the time of the job or in the future. Customer agrees that [All Surface] can stop the job upon discovery of any mold, and Customer will be responsible for remediation of the mold and any and all extra fees and/or charges if mold and/or mildew are found on the job site.

¶9      The last four pages of the Contract each have the heading "Home Improvement Agreement: Specifications." The first of these specifications pages lists the job number that appears on the first page of the Contract and contains a section titled "Customer Responsibility Section," which was left blank. The remainder of the first specifications page has separately titled sections that can be filled in with details regarding the work to be performed by All Surface. Those sections are titled, "DEMOLITION,"

"PLUMBING," "ELECTRIC & LIGHTING," and "WALLS & CEILING Prep."

¶10   The "DEMOLITION" section lists "Sub-floor," "Floor," "Wall," and "Tub/Shower Base" as potentially applicable categories of demolition work to be done by All Surface, with an option to indicate "Yes" or "No" next to each category. The word "YES" was added next to "Tub/Shower Base," and the remainder of that section was left blank, including the space for providing additional details about the anticipated demolition work. In the "PLUMBING" section, the word "YES" was added next to "New Plumbing Lines," and in the associated space for providing additional details, this sentence was added: "We are connecting the over flow valve from [the] furnace onto the main drain." No markings or text was added to the "ELECTRIC & LIGHTING" and "WALLS & CEILING Prep" sections to indicate that work in these categories would be done by All Surface.

¶11   The second and third specifications pages contain designated sections for detailing the components of the shower and bathroom that All Surface would be installing. In the corresponding sections of those pages, the Contract indicates that All Surface would install a "30x30 low threshold shower base," "Smooth Only" shower panels of specified sizes and bends, "a 30 inch curtain rod," "Biscayne" corner shelving, and a "Brushed Nickel finish." In the space for designating "Custom Plumbing Fixtures," this information was again inserted: "We are connecting the over flow pipe from the furnace into the shower drain."

¶12   The fourth specifications page contains a section for noting whether there are "special rules, regulations or contracts required for [All Surface's] performance of the project with any relevant association such as a condo or homeowner's association." No notes were added to this section. The fourth specifications page also contains a "Required" section for sketching the bathroom

floorplan before and after All Surface's anticipated work. No sketches were added to this page.

¶13    Finally, each of the specifications pages contains a line for a "Customer Approval Signature." Reid did not sign any of the specifications pages.

*Smith's Post-Contract Email*

¶14    After Reid signed the Contract but before All Surface began its work, Reid ended up having a furnace company "come and reroute the condensation drain line so that it would go directly into . . . the sewer line." At about the same time, Reid asked All Surface's general manager, David Smith, to send her an email explaining, as Reid put it, "the plan for what we were going to do so that I could share it with the furnace company so they [would know] what the plan was." Smith responded by sending Reid the following email (Smith's post-Contract email) on April 28, 2017:

> When my sales consultant, Brad Watson was in your home on 3/9/2017 he observed and discussed with me the following conditions:
>
> There was extensive mold in the furnace room on the wall on the backside of the shower stall in your basement bathroom. He could tell that the wall had been recently saturated enough that it had become damaged and allowed mold to grow. A plumber had added a temporary extension to the condensation drain pipe that kept it from going [through] the wall and took it close to the drain and that stopped the flooding. I have a hard time believing that was meant to be permanent. A permanent solution is still needed and the damage from the flood repaired. But there doesn't currently seem to be any leaking or flooding.

> The remedy for this issue is to add an additional drain connected to the main line in the furnace room for the [condensation] drain pipe. The mold needs to be treated and the area cleaned of all mold. The framing of the shower stall needs to be replaced and the shower stall redone. The cost of this project is approximately $8400.
>
> Let me know if you have any questions or concerns. Pictures can be provided upon request.

During her deposition, Reid testified that if Smith's post-Contract email "had not said those things, [she] would not have moved forward with [the Contract]." Reid also testified that she expected All Surface would be doing mold remediation work "because that was what [Watson] promised."

*Remediation Company Paints Over Mold and All Surface Replaces Reid's Shower*

¶15 In early June 2017, not knowing when All Surface would begin its work, Reid contacted Remediation Company and asked it to come paint the mold-covered area with KILZ[3] to "just seal it" so that when All Surface later "carried it out of the house, . . . [the mold] would be sealed in there and not be floating around." On June 12, 2017, Remediation Company came and painted over the visible mold with KILZ.

¶16 All Surface began its work on June 26, 2017, and completed it the next day. It removed the old shower down to the wood paneling on the shower side of the walls and installed a new

---

3. The KILZ company sells paint and primer products, including at least one that is advertised as a sealant and as being "mold and mildew-resistant." *See* KILZ, https://www.kilz.com/primer/kilz-mold--mildew [https://perma.cc/4RVS-SG9f].

shower. It did not remove the wood paneling, drywall, or studs between the shower and the furnace room.

*The Lawsuit and Summary Judgment Proceedings*

¶17    In early 2019, Reid noticed that she and her children were experiencing "weird health stuff," including "chronic coughing" and other troubling symptoms. Eventually, she had the home tested for mold and discovered that the mold from before had not been remediated and there was now "really serious" mold in the walls behind the new shower.

¶18    Reid and Richins sued All Surface, Watson, and Smith for breach of contract, breach of the covenant of good faith and fair dealing, fraud, negligent misrepresentation, civil conspiracy, negligence, and breach of the implied warranty of habitability.[4] In support of her breach of contract claim, Reid alleged that All Surface "agreed to perform . . . mold remediation" and "promised to remove walls from the bathroom and remove the shower stall completely" and that All Surface "did not do so." In support of her fraud and negligent misrepresentation claims, Reid alleged that All Surface made intentional or negligent misrepresentations "to induce [Reid] to enter into a contract for All Surface to perform the desired work."

¶19    Following discovery, All Surface moved for summary judgment on all of Reid's claims. As to Reid's breach of contract claim, All Surface argued that the Contract is an integrated agreement and, therefore, that "[p]arol evidence is not admissible to contradict the clear and unambiguous terms of the [C]ontract." All Surface further argued that under the plain terms of the

---

4. Hereafter, when discussing the parties' legal actions and arguments, we refer to Reid and Richins collectively as "Reid" and to All Surface, Watson, and Smith collectively as "All Surface."

Contract, All Surface did not agree to perform any mold remediation and Reid released All Surface from any liability "resulting from mold." Regarding Reid's fraud and negligent misrepresentation claims, All Surface argued that in light of the language in the Contract stating "explicitly that Reid is solely responsible for the mold remediation," as a matter of law Reid could not have reasonably relied on Watson's alleged statements to the contrary or on Smith's post-Contract email.

¶20 In opposition to All Surface's summary judgment motion, Reid argued that the Contract was not an integrated agreement and, thus, that parol evidence, including Smith's post-Contract email, was admissible and created a genuine issue of material fact as to whether All Surface agreed to remediate the mold. Reid further argued, in the alternative, that Utah law allows for the subsequent modification of fully integrated contracts and that there was a genuine issue of material fact as to whether Smith's post-Contract email was a modification of the Contract. Finally, Reid argued that she reasonably relied to her detriment on Watson's alleged statements and Smith's post-Contract email and, therefore, that summary judgment should not be granted to dismiss her fraud and negligent misrepresentation claims.[5]

¶21 The court granted All Surface's summary judgment motion in its entirety. It ruled, among other things, that the Contract is integrated; that "[b]ecause the [Contract] is integrated and unambiguously rules out mold remediation being performed by [All Surface], Reid's contradictory parol evidence is irrelevant"; that as a matter of law Smith's post-Contract email did not constitute a modification of the Contract; and that as a matter of law Reid could not have reasonably relied on Watson's alleged statements or Smith's post-Contract email as inducement to enter

---

5. Reid made additional arguments in opposition to All Surface's summary judgment motion, but she does not renew those additional arguments on appeal. *See infra* note 6.

the Contract given the explicit language of the Contract releasing All Surface from all liability for mold. The court then entered judgment in favor of All Surface.

*Reid's Motion to Amend the Judgment*

¶22    Reid filed a motion to alter or amend the judgment under rule 59(a) of the Utah Rules of Civil Procedure. In that motion, Reid observed that in her response to All Surface's summary judgment motion, she had asserted that it had been her understanding that not only would All Surface remediate the mold but that it would also "remove the shower stall," which Reid understood to mean "tear the wall down to the studs or plywood beneath." Reid noted that the court had "failed to address this disputed fact and its ramifications in its ruling." She then argued that this asserted fact precluded summary judgment, and she asked the court to address this fact and alter its summary judgment ruling accordingly.

¶23    Specifically, Reid again asserted that the Contract was not integrated and, this time, that it included a parol agreement for All Surface to "remove the shower surround down to the studs." She then argued that if All Surface had removed the wall down to the studs, it "would have discovered the mold, triggering the Release language and allowing [All Surface] to stop work and require [Reid] to remediate." Because All Surface did not adhere to the Contract, Reid contended, All Surface "cannot now hide behind its Release language." In her reply memorandum in support of her rule 59 motion, Reid also argued that the term "Fast bath" as used in the Contract "is clearly ambiguous" and, therefore, that "parol evidence is admissible" to show that "mold

remediation was intended [to be] part of the work" All Surface agreed to perform.[6]

¶24 The court denied Reid's rule 59 motion. It explained that the evidence of a parol agreement for All Surface to remove the shower walls down to the studs did not change the court's legal determination that the Contract was integrated. The court also declined to conclude that the Contract was ambiguous as to whether All Surface was required to remove the shower walls down to the studs. On that point, the court noted that the specifications pages "did not list removal of walls or other existing components besides the 'Tub/Shower Base'" as work All Surface was required to do. Finally, the court expressly declined to address—because it was untimely raised—Reid's argument based on asserted ambiguity in the term "Fast bath."

## ISSUES AND STANDARDS OF REVIEW

¶25 Reid now appeals, contending that the district court erred by granting summary judgment in favor of All Surface on her breach of contract, fraud, and negligent misrepresentation claims.[7] "We review a district court's grant of summary judgment

---

6. Reid made additional arguments in her rule 59 motion that have not been renewed on appeal. We recite only those rule 59 motion arguments that Reid has renewed on appeal.

7. Reid does not expressly say that she is challenging only the grant of summary judgment on her breach of contract, fraud, and negligent misrepresentation claims. But her briefing does not mention her claims for breach of the covenant of good faith and fair dealing, civil conspiracy, negligence, or breach of the implied warranty of habitability. Neither does it address the court's reasons for granting summary judgment on those claims. We

(continued…)

de novo, considering the record as a whole, with no deference afforded to the legal conclusions of the district court." *Innerlight, Inc. v. Matrix Group, LLC*, 2009 UT 31, ¶ 8, 214 P.3d 854. "Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Swan Creek Village Homeowners Ass'n v. Warne*, 2006 UT 22, ¶ 16, 134 P.3d 1122 (cleaned up).

¶26    Reid also argues that the court erred by denying the post-judgment motion she filed under rule 59(a) of the Utah Rules of Civil Procedure. "Generally, we afford trial judges wide latitude in granting or denying rule 59 motions. . . . Consequently, we generally disturb a trial court's grant or denial of a rule 59 motion only if it constitutes an abuse of discretion." *Sanpete Am., LLC v. Willardsen*, 2011 UT 48, ¶ 28, 269 P.3d 118. "An abuse of discretion may be demonstrated by showing that the [trial] court relied on an erroneous conclusion of law or that there was no evidentiary basis for the trial court's ruling." *In re Estate of Valcarce*, 2013 UT App 95, ¶ 12, 301 P.3d 1031 (cleaned up).

## ANALYSIS

### I. Summary Judgment

¶27    Reid sets forth five asserted errors in the district court's order granting summary judgment. We identify, address, and ultimately reject each of the assertions of error in turn.[8]

---

therefore assume Reid is not appealing the grant of summary judgment on those claims.

8. To the extent Reid's brief might be construed as making additional claims of error in the court's summary judgment

(continued…)

A.    Integration

¶28    First, Reid asserts that "there [are] significant disputed facts as to the integration of the [Contract]," that parol evidence should have therefore been admitted regarding "the demolition to be performed prior to installing the new shower," and that the disputed facts regarding integration and All Surface's demolition responsibilities precluded summary judgment. We disagree.

¶29    "An integration . . . is a writing or writings constituting a final expression of one or more terms of an agreement." *Far West Bank v. Robertson*, 2017 UT App 213, ¶ 22, 406 P.3d 1134 (cleaned up). "The effect is that once a document or set of documents is deemed an integration, under the parol evidence rule[,] evidence of contemporaneous conversations, representations, or statements offered for the purpose of varying or adding to the terms of the integrated contract is inadmissible." *Id.* (cleaned up).

¶30    Prior to our supreme court's decision in *Tangren Family Trust v. Tangren*, 2008 UT 20, 182 P.3d 326, when a party raised a question of integration and sought to introduce extrinsic evidence to answer that question, trial courts were "essentially required" to consider relevant extrinsic evidence and "determine as a question of fact whether the parties adopted a writing or writings as an integration." *Far West*, 2017 UT App 213, ¶ 22 (cleaned up). In *Tangren*, however, the supreme court expressly disapproved that approach and held instead that, going forward, trial courts were "not [to] allow extrinsic evidence of a separate agreement to be considered on the question of integration in the face of a clear integration clause." 2008 UT 20, ¶ 16; *see also id.* ¶ 17 ("[I]n the face

---

ruling, those additional claims were inadequately briefed. *See generally Ball v. Public Service Comm'n*, 2007 UT 79, ¶¶ 40, 43, 175 P.3d 545 (indicating that a court may decline to address an inadequately briefed argument).

of a clear integration clause, extrinsic evidence of a separate oral agreement is not admissible on the question of integration.").

¶31   Thus, under *Tangren*, a determination of whether a contract is integrated begins with answering the *legal* question of whether the written expression of the parties' agreement contains a clear integration clause. *See id.* ¶ 17; *Fairbourn Com., Inc. v. American Housing Partners, Inc.*, 2004 UT 54, ¶ 6, 94 P.3d 292 ("Questions of contract interpretation not requiring resort to extrinsic evidence are matters of law . . . ." (cleaned up)); *Peterson v. Sunrider Corp.*, 2002 UT 43, ¶ 14, 48 P.3d 918 (explaining that when a contract's interpretation is "determined by the words of the agreement," its interpretation is "a question of law" (cleaned up)). If there is a clear integration clause, the integration inquiry generally ends. *See Tangren*, 2008 UT 20, ¶¶ 14, 16; *but see Montes v. National Buick GMC, Inc.*, 2024 UT 42, ¶ 34, 562 P.3d 688 ("Where multiple instruments are executed at the same time and are intertwined by the same subject matter, the parol evidence rule does not prevent the court from considering both or all agreements together, notwithstanding the presence of an integration clause." (cleaned up)). If, on the other hand, there is no clear integration clause, then a court may consider relevant parol evidence and determine as a matter of *fact* whether the writing is integrated. *See id.*; *see also City of Grantsville v. Redevelopment Agency of Tooele City*, 2010 UT 38, ¶ 25, 233 P.3d 461 ("Because the [agreement at issue] does not contain an integration clause, extrinsic evidence may be introduced to prove whether the [a]greement is integrated."); *Peterson*, 2002 UT 43, ¶ 14 (explaining that when a contract's interpretation is "determined by extrinsic evidence of intent," its interpretation is "a question of fact" (cleaned up)).[9]

---

9. We recognize that in *Tangren* itself the supreme court prefaced its analysis with the unqualified statement that "[w]hether a contract is integrated is a question of fact reviewed for clear

(continued…)

¶32    In light of the foregoing principles, we turn to the legal question of whether the Contract contains a clear integration clause. On this point, the district court rightly observed that from our case law, no "magical or triggering language" has emerged that is required to create a clear integration clause. As the district court noted (quoting *Daines v. Vincent*, 2008 UT 51, 190 P.3d 1269), the following provision does not contain the words *entire agreement*, *integration*, *merger*, *final*, or *complete*, yet our supreme court determined that it "satisfies the 'clear integration clause' standard articulated in *Tangren*": "This release encompasses and satisfies any prior agreements and discussions whether written or verbal . . . ." *Daines*, 2008 UT 51, ¶ 23. Because a writing is an integration if it is "the *final and complete* expression" of "one or more terms" of the parties' bargain, *Tangren*, 2008 UT 20, ¶ 12 (cleaned up), the key to a clear integration clause is that it explicitly and clearly convey that the writing at issue is the final and complete expression of one or more terms of the parties' bargain, *see id.*

¶33    Here, the district court concluded that the Opening Paragraphs of the Contract constitute a clear integration clause indicating that the Contract is final and complete with regard to the services to be performed by All Surface. We agree. The Opening Paragraphs state that "[i]t is important that the customer is confident everything that has been promised to them is listed in writing on this *Customer Agreement and the Job Specification Forms*," that "[t]his means that all services . . . are listed in the Job

---

error." *Tangren Family Trust v. Tangren*, 2008 UT 20, ¶ 10, 182 P.3d 326. We read this unqualified statement as a recitation of the law as it existed at the inception of the *Tangren* appeal. By the conclusion of the *Tangren* opinion, however, the law had clearly changed, as explained above, such that an integration determination now begins with a legal inquiry into whether the writing at issue contains a clear integration clause.

Specification forms," and that "items not listed have not been charged for" and adding them "will require a Change Order Request Form." This language explicitly and clearly conveys that the specifications pages of the Contract contain a final and complete expression of the services All Surface was to perform.

¶34    Reid resists this conclusion by asserting that "there [is] no clear integration clause" in the Contract, and she offers two arguments in support of that assertion: (1) "Reid did not sign the [specifications pages] of the Agreement" and (2) the specifications pages are "incomplete and [do] not contain any recitation of the demolition work to be performed." We are not persuaded by either argument.

¶35    As to the omission of signatures on the specifications pages, Reid does not contend that the lack of signatures on those pages invalidates the Contract. Nor does she explain how the lack of signatures on those pages changes the plain meaning of the Opening Paragraphs of the Contract. Thus, her argument regarding a lack of signatures on the specifications pages is unavailing.

¶36    As to Reid's assertion that the specifications pages are "incomplete and [do] not contain any recitation of the demolition work to be performed," she is mistaken. The first specifications page contains a section expressly titled "DEMOLITION." That section lists "Sub-floor," "Floor," "Wall," and "Tub/Shower Base" as potentially applicable categories of demolition work to be done by All Surface, with an option to indicate "Yes" or "No" next to each category. The word "YES" was added next to "Tub/Shower Base." It is conspicuously absent next to "Wall."

¶37    The fact that the specifications pages plainly state that All Surface would demolish the tub/shower base belies the assertion that they do not contain any recitation of the demolition work to be performed. And the fact that the "DEMOLITION" section

indicates no other demolition work to be done by All Surface does not mean that the specifications pages are incomplete on this topic. Instead, in light of the Opening Paragraphs' statements that "all services [to be provided by All Surface] . . . are listed in the [specifications pages]" and that "items not listed have not [been] charged for" and "will require a Change Order Request Form," the absence of other listed demolition work simply confirms that All Surface was not required to perform any additional demolition.

¶38 Finally, the fact that the "Customer Responsibility Section" of the specifications pages was left blank does not change our analysis. While the Opening Paragraphs constitute a clear integration clause regarding the services All Surface was to perform, they do not purport to be an integration clause regarding Reid's responsibilities related to the project. *See generally Far West Bank v. Robertson*, 2017 UT App 213, ¶ 22, 406 P.3d 1134 ("An integration . . . is a writing or writings constituting a final expression of *one or more* terms of an agreement." (cleaned up) (emphasis added)). Thus, the fact that the Customer Responsibility Section was left blank simply does not affect the Contract's integration as to the services All Surface was to perform.

¶39 In sum, as a matter of law under the undisputed written terms of the agreement, the Contract is integrated as to the services All Surface was to perform, and parol evidence is not admissible to vary those services.

B. Ambiguity

¶40 Reid next asserts that the Contract is ambiguous as to whether All Surface was required to "tear out the wall [and] remove the old shower [stall]"; that parol evidence should, therefore, have been admitted on that issue; and that material disputes in the parol evidence on this point preclude summary

judgment. Reid is correct that even if a contract is integrated, if its terms are ambiguous, then "extrinsic evidence is admissible to clarify the meaning of those [ambiguous] terms." *Tangren Family Trust v. Tangren*, 2008 UT 20, ¶ 18, 182 P.3d 326. But Reid is not correct that the Contract is ambiguous as to whether All Surface was required to tear out walls or remove the old shower stall. As explained above, *see supra* ¶¶ 36–37, the Contract plainly states that All Surface was required to perform only the services listed in the specifications pages, and demolition of walls and the shower stall plainly is not listed in the specifications pages. We therefore conclude as a matter of law under the undisputed terms of the written agreement that the Contract is not ambiguous and parol evidence is not admissible on this point.

C.    Breach

¶41    Reid asserts that the district court erred in granting summary judgment because there are "significant material disputed facts as to whether [All Surface] . . . breached the agreement by not removing the prior shower." In support of her assertion that there are genuine disputes of material fact on this point, Reid points exclusively to evidence extrinsic to the Contract—specifically, her deposition testimony, Watson's deposition testimony, Smith's deposition testimony, and Smith's post-Contract email—all of which she says demonstrate an agreement for All Surface to "remov[e] the old shower wall before installing a new shower." However, because we have concluded that the Contract is integrated as to the services All Surface was obligated to perform, the extrinsic evidence she points to may not be considered to prove the existence and breach of such an agreement. Therefore, her argument on this point is also unavailing.

D.      Negligent Misrepresentation and Fraudulent Inducement
        to Enter the Contract

¶42     Next, Reid points to the rule that allows for the admission
of "extrinsic evidence in support of an argument that [a] contract
is not, in fact, valid . . . [when the] contract is voidable for fraud."
*Tangren*, 2008 UT 20, ¶ 15. She then argues that extrinsic evidence
in this case creates a genuine dispute of material fact as to whether
All Surface made misrepresentations that induced her into
signing the Contract by

> exaggerat[ing] [its] capabilities regarding mold
> remediation, [placing mold remediation] on an
> emailed list of things that would be done in the
> project, fail[ing] to detail the [specifications pages]
> or obtain Reid's signature, [and] fail[ing] to
> undertake the demolition [it] claimed needed to be
> done, which would have uncovered the mold and
> sparked a discussion with Reid as to remediation.

¶43     The district court rejected Reid's fraud and negligent
misrepresentation arguments by quoting *Gold Standard, Inc. v.
Getty Oil Co.*, 915 P.2d 1060 (Utah 1996), for the proposition that
"a party cannot reasonably rely upon oral statements by the
opposing party in light of contrary written information," *id.* at
1068, and then explaining that Reid "cannot show that [she]
reasonably relied upon promises to eradicate mold [that] were
contrary to the written [Contract]." Reid's argument on appeal
does not engage with this reasoning. "If an appellant does not
meaningfully engage with the district court's reasoning, that
appellant falls short of demonstrating any error on the part of the
district court." *North Park Holdings LLC v. Duke Rental Co.*, 2025 UT
App 42, ¶ 25, 567 P.3d 1085 (cleaned up). Hence, Reid's foregoing
argument for reversal of the district court's grant of summary
judgment on her fraud and negligent misrepresentation claims
fails.

E.      Negligent Misrepresentation and Fraudulent Inducement to Remain in the Contract

¶44     Finally, Reid asserts, apart from the argument that All Surface induced her into *entering* the Contract through misrepresentations, that the district court erred in granting summary judgment by "fail[ing] to address [the argument] that [Smith's post-Contract email] induced Reid into *remaining* in the [Contract] rather than exercising her right to cancel [it]." (Emphasis added.) Reid did not preserve this issue for our review.

¶45     "In order to preserve an issue for appeal the issue must be presented to the trial court in such a way that the trial court has an opportunity to rule on that issue." *State v. Sanchez*, 2018 UT 31, ¶ 30, 422 P.3d 866 (cleaned up). The issue "must be sufficiently raised to a level of consciousness before the trial court and must be supported by evidence or relevant legal authority." *State v. Dean*, 2004 UT 63, ¶ 13, 95 P.3d 276 (cleaned up). "Although new *arguments* . . . [may be raised on appeal] under a properly preserved issue or theory, . . . an argument based upon an entirely distinct legal theory is a new claim or issue and must be separately preserved." *True v. Utah Dep't of Transp.*, 2018 UT App 86, ¶ 32, 427 P.3d 338 (cleaned up).

¶46     In her complaint, Reid alleged that All Surface induced her through misrepresentations to "enter into a contract with All Surface" and that but for those misrepresentations, she "never would have agreed to hire All Surface." In its summary judgment motion, All Surface addressed Reid's fraud and negligent misrepresentation claims as framed in the complaint. In opposing All Surface's motion on her fraud and negligent misrepresentation claims, Reid argued that she "relied upon verbal statements made by [Watson] as [Watson] sold All Surface's services to [Reid]"; that "these statements were reduced to writing" in Smith's post-Contract email; and that because she "reasonably relied on both those representations," her fraud and

negligent misrepresentation claims "must stand." Under a heading regarding "Subsequent Modification of Fully Integrated Contracts," Reid argued in the alternative that Smith's post-Contract email was evidence of a "written modification" of the Contract. In the context of that modification argument, Smith asserted that she had "clearly testified that she would not have moved forward with [All Surface] but for [Smith's post-Contract email]" and that she had "relied upon [Smith's] representations."

¶47 At the hearing on All Surface's summary judgment motion, Reid spent over three pages of transcript making her modification argument and roughly three pages making her fraud argument. At no point during her argument at the hearing did Reid assert that her fraud or negligent representation claims were based on the theory that Smith's post-Contract email induced her to *remain* in the Contract and not exercise her right to cancel it.

¶48 In response to Reid's fraudulent inducement and negligent misrepresentation arguments based on Smith's post-Contract email, the district court ruled as follows:

> Reid asserts that . . . she relied upon [Smith's post-Contract email when she signed the Contract]. Whether her reliance upon that writing was reasonable would then constitute a factual issue which should be resolved by a jury. However, this argument ignores the undisputed fact[] . . . [that] Reid signed the [Contract] on March 9, 2017. . . . Reid did not receive [Smith's post-Contract email] until April 28, 2017, and could not have relied upon that written content in deciding whether or not to sign the [Contract]. Thus, there can be no reasonable reliance on [that email].

The district court rejected Reid's contract modification argument as well, reasoning as follows:

> [Smith's post-Contract email] is presented as a summary of the observations made at the time [All Surface] bid on the remodel project. There is nothing in the [e]mail which details a change in the [Contract] that was signed at that time. Indeed, there is no email or other communication between the parties to support an argument that amending the [Contract] was even being contemplated. Reid agrees that she requested [Smith's post-Contract email] for the purpose of informing a third party about the remodel project. Thus, it was not even written with Reid as its primary audience—[its] target was the furnace company whose work might be impacted by [All Surface's] project.

The court did not address the theory that Smith's post-Contract email induced Reid into remaining in the Contract instead of canceling it. And Reid did not raise that theory in her post-judgment motion.

¶49   On appeal, Reid again points to Smith's post-Contract email, but she now asserts that Smith's post-Contract email "induced her into *remaining* under the [Contract] with [All Surface]." (Emphasis added.) This is an entirely distinct theory of fraud than the one she pled in the complaint and argued in opposition to All Surface's summary judgment motion, and it plainly was not brought to a level of consciousness before the district court. Thus, it was not preserved, and we do not address it. *See True*, 2018 UT App 86, ¶ 32; *Sanchez*, 2018 UT 31, ¶ 30.

¶50   Because, as we have explained above, each of Reid's arguments asserting error in the district court's summary judgment ruling is unavailing, we affirm the court's grant of summary judgment.

## II. Rule 59(a) Motion

¶51    Reid also contends that, for two reasons, the district court erred by denying her motion pursuant to rule 59(a) of the Utah Rules of Civil Procedure. Neither of her arguments is persuasive.

¶52    First, she again asserts that the Contract is ambiguous as to whether All Surface contracted to remove the old shower wall, and she contends that the district court erred by not altering its judgment to allow a trial based on extrinsic evidence on the issue of whether All Surface was obligated to remove the old shower wall down to the studs. She argues that the Contract is ambiguous because it does not say that All Surface "would *not* tear out the wall [or] remove the old shower." This argument fails under our analysis articulated above, *see supra* ¶ 40, and we incorporate that analysis here.

¶53    Second, Reid asserts that the term "Fast bath" as used in the Contract is ambiguous as well. The district court noted that the first time Reid raised this issue below was in her reply memorandum in support of her rule 59(a) motion. The court determined that the argument was untimely raised, and it expressly declined to address the argument. We see no abuse of discretion in the court's decision not to address an argument raised for the first time in a reply memorandum in support of a rule 59(a) post-trial motion. *See Knight v. Ebert (In re Estate of Justheim)*, 824 P.2d 432, 435 (Utah Ct. App. 1991) ("[W]e cannot say that the trial court abused its discretion or acted unreasonably in denying [the] appellants' motion for a new trial on the ground of estoppel when that doctrine was not raised before or during the trial.").

¶54    For the foregoing reasons, we affirm the court's order denying Reid's rule 59(a) motion.

CONCLUSION

¶55    The Contract contains a clear integration clause as to the services All Surface was obligated to perform, and those services unambiguously did not include mold remediation or demolition of the shower wall down to the studs. Accordingly, parol evidence is inadmissible to show an agreement for All Surface to perform those services. Because Reid's breach of contract arguments rely on inadmissible parol evidence, we affirm the grant of summary judgment on her breach of contract claim. We affirm the grant of summary judgment on her fraud and negligent misrepresentation claims because Reid has not engaged with the district court's reasoning that, in the face of the plain terms of the Contract to the contrary, Reid's reliance on All Surface's alleged misrepresentations prior to the Contract was not reasonable, and because her new theory regarding reliance on Smith's post-Contract email was not preserved. Finally, we conclude that the district court did not abuse its discretion in denying Reid's rule 59(a) motion, and we therefore affirm the denial of that motion.

————————